**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**THOMAS C. ALLEN**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TROY A. SCHNITZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A02-1212-CR-965 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1112-FB-275

**August 29, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Troy A. Schnitz was the primary caregiver of his three-month-old son. Schnitz struck his son, slammed his head into the floor, shook him violently, and shoved a bottle in his mouth, resulting in such serious brain injuries that his son can neither breathe nor eat on his own and requires permanent and continuous nursing care. The State charged Schnitz with, and he pled guilty to, three counts of class B felony battery resulting in serious bodily injury, one count of class B felony neglect of a dependent resulting in serious bodily injury, and one count of class D felony battery. The trial court sentenced Schnitz to an aggregate term of forty-seven years, with three years suspended.

Schnitz appeals his conviction for class B felony neglect of a dependent, arguing that because it is supported by the same factual basis that supports his three convictions for class B felony battery, it violates his constitutional right against double jeopardy. Schnitz also appeals his aggregate forty-seven-year sentence, arguing that it is inappropriate in light of the nature of the offenses and his character. We conclude that his conviction for class B felony neglect of a dependent violates double jeopardy principles and therefore must be vacated. We also conclude that he has failed to carry his burden to persuade us that his sentence is inappropriate. Accordingly, we vacate his conviction for class B felony neglect of a dependent and affirm the sentence imposed for his remaining convictions.

**Facts and Procedural History**

On October 21, 2012, Schnitz pled guilty without a plea agreement to three counts of class B felony battery resulting in serious bodily injury, one count of class B felony neglect

of a dependent resulting in serious bodily injury, and one count of class D felony battery. The facts supporting his convictions to which he admitted at the guilty plea hearing follow.

In October 2011, twenty-two-year-old Schnitz lived in Huntington County with his wife and their son, three-month-old Raiden. Because Schnitz's wife worked outside the home, he provided primary care for Raiden. The facts supporting Count I, class B felony battery resulting in serious bodily injury, are that Schnitz "became angry with Raiden because he would not stop crying and [Schnitz] struck him in a manner that resulted in a skull fracture to his left parietal bone." Change of Plea Tr. at 9. This battery occurred on a different date than the batteries that Schnitz committed under Counts II, III, and V. Schnitz admitted that he knowingly touched Raiden in a rude, insolent, or angry manner which resulted in serious bodily injury.

The facts supporting Count II, class B felony battery resulting in serious bodily injury, are that Schnitz "became angry with Raiden because he would not stop crying and [Schnitz] slammed his head into the floor which resulted in skull fractures to his occipital and right parietal bones." *Id.* at 10. This battery occurred on a different date than the batteries that Schnitz committed under Counts I, III, and V. Schnitz admitted that he knowingly touched Raiden in a rude, insolent, or angry manner which resulted in serious bodily injury.

The facts supporting Count III, class B felony battery resulting in serious bodily injury, are that Schnitz "became angry with Raiden because he would not stop crying and [Schnitz] shook him violently. [He] shook Raiden hard enough that it resulted in a subdural hematoma which is bleeding in the brain and it caused Raiden's retinas to detach." *Id.* at 11.

3

This battery occurred on a different date than the batteries that Schnitz committed under Counts I, II, and V. Schnitz admitted that he knowingly touched Raiden in a rude, insolent, or angry manner which resulted in serious bodily injury.

As for Count IV, class B felony neglect of a dependent resulting in serious bodily injury, Schnitz admitted that "[w]hile caring for his son [], [Schnitz] knowingly placed Raiden in a situation that endangered his life and health. The neglect of [] Raiden resulted in serious bodily injury to Raiden." *Id*. at 11-12.

The facts supporting Count V, class D felony battery, are that Schnitz "became angry with Raiden because he would not stop crying and [Schnitz] shoved a bottle into his mouth which resulted in Raiden's frenula tearing and bleeding." *Id*. at 12. This battery occurred on a different date than the batteries that Schnitz committed under Counts I, II, and III. Schnitz admitted that he knowingly touched Raiden in a rude, insolent, or angry manner which resulted in bodily injury.

At the sentencing hearing, Schnitz testified that he was smoking "spice" at the time of the offenses and explained that he had previously smoked pot, but because pot was illegal and spice was legal, he had switched to spice. Sentencing Tr. at 70. He was no longer using any drugs and was taking drug and alcohol classes, having finished fifteen of the twenty for which he was scheduled. He was also participating in counseling and was gainfully employed. He testified,

> I made a wrong decision. I did horrible things that I can't take back and there's, there's been a lot of commotion about it and people being judgmental and they just don't really stop and think about me, how I really feel. This was

4

my child. I made that decision and it's been very hard to deal with. I would give anything to be able to switch him spots.

*Id.* at 71-72.

Other evidence presented at the sentencing hearing shows that Raiden was hospitalized from October 22 through 24, 2011, for seizures. Schnitz did not reveal to doctors that he had done anything to Raiden. The doctors diagnosed the seizures as being caused by the onset of pneumonia and a high fever. After Raiden returned home, Schnitz inflicted additional batteries on Raiden. On October 29, 2011, Raiden was taken to the local hospital in full cardiac arrest. When the doctors informed Schnitz of the full extent of Raiden's injuries, Schnitz did not tell doctors what he had done to Raiden. Raiden was transferred to Riley Children's Hospital in Indianapolis, and Schnitz did not inform those doctors of what he had done to Raiden. On October 30, 2011, police interviewed Schnitz. Initially, he acted like he did not know how Raiden could have incurred his injuries, offering only that Raiden fell out of his swing and hit his head. About an hour and a half into his police interview, Schnitz finally began admitting what he had done to Raiden.

The State submitted a doctor's report that detailed the severe injuries suffered by Raiden, indicating that he could not breathe or eat on his own and needed continuous nursing care. The report also stated that Raiden would never be able to talk, sit independently, walk, or potty train.

Testifying on Schnitz's behalf were his wife, mother, brother, mother-in law, sister-in-law, and a good friend. Generally speaking, they testified to the effect that Schnitz was a good person, a good father, and a nonaggressive person with no prior history of violence or

5

anger.  They also testified that he was remorseful for what he had done and had turned his life around.  They asked the trial court to show mercy so that Schnitz could continue to act as a husband and father because his wife and family needed him.

Following the presentation of evidence, the trial court found that Schnitz's role as Raiden's primary caregiver, his position of trust, his drug use, the severity of the injuries, and the multiple events of abuse were aggravating circumstances.  The trial court found that Schnitz's lack of criminal history, remorse, and guilty plea were mitigating circumstances. The trial court determined that the aggravating circumstances outweighed the mitigating circumstances and sentenced Schnitz to fifteen years each for Counts I, II, and III, all to run consecutive to one another and to the two-year sentence imposed on Count V.  The trial court sentenced Schnitz to fifteen years on Count IV, neglect of a dependent, to run concurrent with his other sentences.  Accordingly, Schnitz received an aggregate term of forty-seven years, with three years suspended to probation.

**Discussion and Decision**

*I.  Double Jeopardy*

Schnitz argues that his conviction for class B felony neglect of a dependent resulting in serious bodily injury violates double jeopardy principles.  Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense."  Our supreme court explained,

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential

6

elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

*Richardson v. State*, 717 N.E.2d 32, 49-50 (Ind. 1999) (footnote omitted). We review claimed double jeopardy violations de novo. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011).

In this case, the statutory elements test entails a comparison of the statutory elements of battery and neglect of a dependent. A person over the age of eighteen commits battery as a class D felony when he or she knowingly or intentionally touches another person who is less than fourteen years old in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1(a)(2). Battery is a class B felony when committed by a person over the age of eighteen on a victim that is under the age of fourteen if it results in serious bodily injury. Ind. Code § 35-42-2-1(a)(4). A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally places the dependent in a situation that endangers the dependent's life or health commits neglect of a dependent, a class D felony. Ind. Code § 35-46-1-4(a). Neglect of a dependent is a class B felony if it results in serious bodily injury. Ind. Code § 35-46-1-4(b)(2).

Battery and neglect of a dependent contain statutory elements that are not included in the other. As charged here, battery requires proof of the accused's knowing or intentional rude, angry, or insolent touching, that the accused was over eighteen, and that the victim was less than fourteen, none of which is required by statute to prove neglect of a dependent. Neglect of a dependent requires proof that the accused had the voluntary or legal care of a

7

dependent and placed the dependent in a situation that endangered the dependent's life or health, but such proof is not statutorily required to prove battery. Accordingly, the *Richardson* statutory elements test is not violated.

As for the *Richardson* actual evidence test,

> the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson*, 717 N.E.2d at 53.

Schnitz argues that his neglect of a dependent conviction violates the actual evidence test because it is not supported by facts that are separate and distinct from those supporting his battery convictions. The State concedes that the same serious bodily injuries supporting the enhancement of neglect of a dependent to a class B felony are the same serious bodily injuries supporting the enhancement of the batteries in Counts I, II, and III to class B felonies, and therefore, the enhancement of the neglect of a dependent count violates double jeopardy principles and must be reduced to a class D felony.[1] However, the State argues that a conviction for class D felony neglect of a dependent would not violate the actual evidence

---

[1] "Often discussed under the general rubric of Indiana double jeopardy jurisprudence, we recognize 'a series of rules of statutory construction and common law that are separate and in addition to the protections afforded by the Indiana Double Jeopardy Clause.'" *Sanjari v. State*, 961 N.E.2d 1005, 1007 (Ind. 2012) (quoting *Spivey v. State*, 761 N.E.2d 831, 834 (Ind. 2002)). One of these rules prohibits "'conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)). This is the rule upon which the State relies.

8

test because the factual basis for class D felony neglect of a dependent is separate and distinct from the facts supporting Schnitz's class B felony batteries. We disagree.

At the guilty plea hearing, Schnitz's admissions to his battery convictions described the conduct that caused specific serious bodily injuries. For Count I, Schnitz admitted to striking Raiden resulting in a left parietal bone fracture. For Count II, he admitted to slamming Raiden's head against the floor causing occipital and right parietal bone fractures. For Count III, he admitted to shaking Raiden violently causing a subdural hematoma and detachment of Raiden's retinas. For the neglect of a dependent charge, Schnitz admitted to knowingly placing Raiden "in a situation that endangered his life and health" resulting in serious bodily injury. Guilty Plea Tr. at 12.

The State asserts that the placing of Raiden "in a situation that endangered his life and health" is a different factual basis than those supporting the batteries. However, the State fails to explain what Schnitz actually did to place Raiden in a situation that endangered his life and health and ignores the implication arising from the fact, to which it concedes, that the same serious bodily injuries that were caused from the neglect of a dependent were caused by the batteries. Based on the facts that Schnitz admitted to at his guilty plea hearing, and given that the same injuries support the enhancements of all the offenses, it reasonably follows that the striking, slamming, and shaking that make up the rude, angry, or insolent touchings of Schnitz's battery convictions was also the conduct that Schnitz engaged in that placed Raiden in a situation that endangered his life and health. At the sentencing hearing, the prosecutor stated, "I believe that count four which is the neglect of the dependent is merged with the

9

counts one, two and three because we have relied upon the injuries[], that the defendant inflicted in those counts to support the neglect charge." Sentencing Tr. at 115. This statement supports the reasonable possibility that because the neglect of a dependent injuries were the same as those for the batteries, the conduct comprising the placement of Raiden in a situation that endangered his life and health is the same conduct comprising the rude, angry, or insolent touching in the battery counts. In addition, the battery counts and the neglect of a dependent count included the fact that Schnitz was the primary care giver of three-month-old Raiden, which establishes that Schnitz had the care of Raiden who was dependent on him. Accordingly, there are not separate and distinct facts supporting the offense of neglect of a dependent even as a class D felony. We conclude that Schnitz's conviction for neglect of a dependent fails the *Richardson* actual evidence test and thus violates the Indiana Constitution double jeopardy clause. Accordingly, we vacate Schnitz's conviction for class B felony neglect of a dependent.[2]

## II. Inappropriateness of Sentence

Schnitz argues that his sentence is inappropriate pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in

---

[2] The sentence for this conviction was ordered concurrent with the other sentences, so the vacation of this conviction does not affect Schnitz's aggregate sentence.

light of the nature of the offense and the character of the offender."[3] When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Schnitz has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

As for the nature of the offense, "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). For a class B felony, the advisory sentence is ten years, and the sentencing range is six to twenty years. Ind. Code § 35-50-2-5. For a class D felony, the advisory sentence is one and a half years, and the sentencing range is six months to three years. Ind. Code § 35-50-2-7. "'[A]ppellate review should focus on the forest–the aggregate sentence–rather than the trees–consecutive or concurrent, number of counts, or length of the sentence on any individual count.'" *Pierce*, 949 N.E.2d at 352 (quoting *Cardwell*, 895 N.E.2d at 1225). For his three class B felony convictions and one class D felony conviction, Schnitz received an aggregate sentence of forty-seven years.

---

[3] Schnitz also argues that the trial court did not properly weigh the aggravating and mitigating circumstances. However, "'the trial court no longer has any obligation to weigh aggravating and mitigating factors against each other when imposing a sentence' and thus 'a trial court can not now be said to have abused its discretion in failing to properly weigh such factors.'" *Kimbrough v. State*, 979 N.E.2d 625, 628 (Ind. 2012) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218).

11

Here, the nature of the offenses was undeniably horrific. At the sentencing hearing, the State submitted the report of Dr. Antoinette L. Laskey, M.D., M.P.H., who was involved with Raiden's care at Riley Hospital for Children, which detailed Raiden's permanent medical condition:

> Raiden presented to medical care at the age of 4 months in critical condition and it was unclear that he would survive his injury. While alone in the care of Troy, Raiden suffered irreparable brain damage, brain injuries on more than one occasion, multiple skull fractures, massive retinal hemorrhages and torn labial frenula (the piece of skin attaching the lip to the gum). The history provided at the time of my medical interview with Troy was completely implausible to explain any of the injuries his son received. At the time of [Raiden's] initial hospitalization[,] it was anticipated that he would not survive due to the extremely severe nature of the brain injury. Due to heroic medical interventions however, he did survive. It should be noted that in the hospital after his injuries were diagnosed, we offered the opportunity to withdraw medical support as it was what we call "futile care". Futile care is when a person sustains such a substantial, devastating brain injury there is no hope for meaningful recovery and a person (if old enough) or their family (if the patient is a dependent) would not want to live with this injury, it would be ethically defensible to remove support and allow the process to progress to death−a process that is only being thwarted by extreme medical interventions. In this case, Raiden's father refused to consider this option.
>
> In order to prepare for the rest of Raiden's life given his injuries, he required a tracheostomy because he cannot breathe on his own; a ventilator because without it he could not breathe; a G-tube because he cannot swallow food; a Nissen fundoplication, a medical procedure to tie off his stomach at the top to prevent aspiration pneumonia; round the clock nursing care because if his trach clogged, he would suffocate, and a list of over a dozen medications he requires to control his seizures, digestion, pain, extreme hypertension and other medical complications associated with his inflicted head injury.
>
> Given the extent of his injuries, Raiden will never walk, talk, potty train, sit independently or eat by mouth. His life will certainly not be of a normal length−most children who sustain injuries like his will die in a matter of years due to infection (pneumonia, urinary tract, sepsis) or as a complication of seizures or high blood pressure. He will always be completely dependent on

12

care providers, 24 hours a day, to ensure he can breathe and that he gets adequate nutrition.

By all accounts, Raiden was a normal, healthy, growing baby on the day he was injured at the hands of his caregiver. A 4 month old can smile, laugh, recognize faces of caregivers, sit, roll over, hold things in their hands. Raiden at now 16 months will never do these things, nor any of the things a typical 16 month old can do (walk, run, build towers with blocks, feed themselves, get undressed, have recognizable words, follow simple directions). The person Raiden was and would be on the day the ultimate event occurred is no longer a reality.

State's Ex. 2.

Given that Raiden was injured by the person who was primarily responsible for him, that he was battered multiple times, and that his injuries will permanently prevent him from having any semblance of a normal life, even the maximum possible sentence would not be inappropriate given the nature of the crimes. Given the nature of the offense, we are unpersuaded by Schnitz's argument that consecutive sentences are inappropriate because there was only one victim.

As for Schnitz's character, there are some circumstances that reflect favorably on it. Schnitz is remorseful and pled guilty without the benefit of a plea agreement. He has no criminal history. In the last year, he attended drug counseling, engaged in individual counseling, obtained full-time employment, and pays child support. His character is also positively reflected by his family's forgiving and supportive testimony. Other circumstances reflect negatively. The presentence investigation report shows that Schnitz has a history of smoking marijuana on a daily basis. He switched to spice and was smoking it every ten to twenty minutes at the time of the offenses. Also, Schnitz failed to inform medical personal

13

as to the true source of Raiden's injuries and did not reveal the truth about his conduct to police until it was clear that his version of events was inconsistent with Raiden's injuries. This shows that he was more concerned about himself than he was for Raiden. Overall, Schnitz's character does not warrant a reduction in his sentence. Schnitz has failed to persuade us that his sentence is inappropriate in light of the nature of the offenses and his character. Therefore, we affirm his forty-seven-year sentence.

Affirmed in part and vacated in part.

BARNES, J., and PYLE, J., concur.